[Civil No. 3769. Filed June 8, 1936.]

[58 Pac. (2d) 518.)

SIMS PRINTING COMPANY, a Corporation, Plaintiff, v. ANA FROHMILLER, as State Auditor, Defendant.

Mr. Richard F. Harless, for Plaintiff.

ROSS, J.—This is an action in *mandamus* brought by plaintiff to compel the state auditor, Ana Frohmiller, to audit and allow a claim of $159 against the general fund of the state for 100,000 voters' registration cards, ordered of plaintiff by the Secretary of State, James H. Kerby.

After examining the complaint, the court declined to enter an order to show cause, for the reason that it clearly appeared from the complaint that the auditor was entirely correct in refusing to audit or allow the claim. Ordinarily we would not give our reasons in writing for denying the writ, but inasmuch as the purpose of the proceeding, as shown by the complaint and accompanying memorandum of authorities, is to secure a judicial determination of the powers and duties of the Secretary of State and his right to incur debts in connection with the election laws, more especially the primary election laws, we will depart from the usual custom and state the reasons for refusing the rule to show cause.

The plaintiff describes the debt and the reason for its incurrence in the following language:

"The claim upon which this action is based is a claim for registration cards with which the Secretary of State may compile a card index file of all the registered voters of the State of Arizona in alphabetical order so that the giant task of checking the

signatures on nomination papers with the list of registered voters of the state may be accomplished in time so that the Secretary of State may certify to the various boards of supervisors the names of those candidates who are entitled to have their names printed on the official primary ballot. The printed primary ballot must be ready for distribution for absentee voters not less than twenty days prior to the primary election (Section 1305, R. C. A. 1928).''

We quote this as it pictures pretty clearly the plaintiff's contentions.

The plaintiff has copied into its complaint a letter from the Secretary of State to the auditor asking her to approve his claim, an excerpt from which reads as follows:

''I am enclosing Claim No. 51 of the Sims Printing Company, in the amount of $159.00 for the printing of 100,000 voters' registration cards. The claim being primary and general election expense, for which there is no appropriation, is drawn on the General Fund, in order to carry out the provisions of chapter 22, Revised Code of Arizona, 1928, and amendments thereto; chapter 62, Session Laws 1933; chapter 82, Session Laws 1933; chapter 2, First Special Session, 1933, and chapter 4, First Special Session, 1933.''

A searching examination of chapter 22 of the Revised Code of 1928 and of the different session laws referred to fails to disclose any direct legislative authority for the incurring by the Secretary of State of an indebtedness for voters' registration cards. The only reference in the Session Laws of 1933 to the Secretary of State is found in section 7, chapter 62, Regular Session of that year, which reads: ''Sec. 7. Affidavit of Registration in General County Register; Stub to Secretary of State. The recorder, upon receipt of an affidavit of registration shall, if the same is in proper form, remove the stub therefrom, assign the affidavit to its proper precinct and alpha-

betical arrangement, in the general county register, and transmit the stub to the secretary of state." This provision is supplemented by chapter 94, Laws of 1935. Therein it is provided that when cancellations of registrations are made the county recorder shall "transmit to the Secretary of State a list of names of all electors whose registrations are so cancelled and the Secretary of State shall readjust his records to conform."

Chapter 82, *supra,* provides for absentee voting.

Chapter 2, First Special Session, *supra,* prescribes the method to be followed by the state in ratifying any proposed amendment to the federal Constitution; and chapter 4, First Special Session, *supra,* is an act submitting certain proposed amendments to the state Constitution at a special election.

In article 10, chapter 22, Revised Code of 1928 (sections 1273–1295), are found the provisions of the law governing primary elections and the manner and method of getting one's name printed on the official ballot for the primary. Therein are conferred on the Secretary of State certain enumerated duties as to the candidates for the offices of presidential elector, United States Senator, Representative in Congress, state officers (except members of the legislature and the superior judges), and other state officers for which the entire electorate, or the electorate of a subdivision of the state greater than a county, is entitled to vote.

Section 1275 requires any person of the above-enumerated class desiring to become a candidate at a primary, if he would have his name on the official ballot, not less than forty nor more than ninety days before the primary election, to file a nomination petition with the Secretary of State, signed by himself, giving his place of residence and postoffice address,

naming the party of which he desires to become a candidate and the date of the primary election.

Under section 1276 such person shall also within like time and with the same officer file a nomination paper or papers "which shall be substantially in the following form:

"I, the undersigned, a qualified elector of the . . . . precinct of the county of . . . . state of Arizona, and a member of the . . . . party, hereby nominate . . . . , who resides at . . . . in the county of . . . . for the party nomination for the office of . . . . to be voted for at the primary election to be held . . . . as representing the principles of said party, and I declare that I have not signed, and will not sign, any nomination paper for more persons than the number of candidates necessary to fill said office at the next ensuing election.

"Names of signers. Name of city or post office. Street No. Date of signing."

If this form of nomination paper, or "substantially" this form, is used and the signatures thereon are certified to as required by section 1276, it is the duty of the Secretary of State to accept and file it. It is nowhere made his duty to check the names of signers with the registered voters of the county or precinct as indicated on the nomination paper before he files it. This duty might have been imposed on him by the legislature had it seen fit.

The pertinent provisions of section 1276 read:

"No signature shall be counted unless it is upon a sheet having such form [above quoted] at the top thereof. Each signer of a nomination paper shall sign but one such paper for the same office unless more than one candidate is to be elected to such office, and in that case not more than a number of nomination papers equal to the number of candidates to be elected to such office. To each such nomination paper shall be appended a certificate by a qualified elector entitled to vote for the candidate whose nomination

paper he certifies, stating that to the best of his knowledge and belief all the signers thereof are qualified electors of the precinct which they give as their residence, and that each signer is a member of the party the nomination of which the candidate whose name appears on such nomination paper is seeking.''

Section 1277 provides that the percentage of the party vote for Governor in the preceding election on nomination papers shall be not less than one nor more than ten of the total party vote of the state, or at least one per cent. of the party vote in at least three counties.

Section 1285 makes it the duty of any such candidate before any primary election to file with the Secretary of State the name of every person, with his address, by or through whom such candidate has expended or proposes to expend money in defraying the expenses of his campaign, or state that he has authorized and will authorize no one so to act for him, but that he will in person account for all money or other things of value expended in the interests of his candidacy. Said section further provides that if any candidate fail to comply with the terms thereof his name shall not be printed upon the official ballot.

Section 1286 makes it the duty of all such candidates to prepare and file an itemized statement of expenses, subscribed and sworn to by the candidate, with the Secretary of State within ten days after the primary election.

Section 1287 provides that upon the failure of any candidate, even though he shall have received the nomination of his political party, to file the full and complete report as required by section 1286, he shall not receive his certificate of nomination until such reports are filed.

Section 1284 provides that no person shall have his name printed on the official ballot as a candidate in the general election unless he has fully complied with the provisions of article 10, chapter 22, *supra.*

The provisions of article 10, chapter 22, *supra,* as amended, are directed to persons who desire to become candidates at a primary election and prescribe what such persons must or must not do. The duties of the Secretary of State in connection with such candidacies are more implied than direct. The Secretary of State, when a candidate is running for a state-wide office, or for an office in an electoral district greater than a county, is made the depositary of papers such candidate must have in order to qualify him to have his name printed on the ballot. If the candidate's nomination petition and his nomination papers *substantially* comply with the provisions of the law in form and substance, and are timely presented to the Secretary of State, such candidate is entitled to have his name certified by the secretary to the different boards of supervisors so that his name may be printed upon the official ballot. Of course, if the nomination petition, for instance, should be presented to the secretary more than ninety days or less than forty days before the primary, or if it failed to designate the candidate's party or give his residence and postoffice address, the secretary might well refuse to accept it. Likewise, if the nomination papers should not be certified by a qualified elector "stating that to the best of his knowledge and belief all the signers thereof are qualified electors of the precinct which they give as their residence, and that each signer is a member of the party the nomination of which the candidate whose name appears on such nomination paper is seeking," or if the signers so certified be less than the requisite percentage of his

party vote for Governor at the preceding general election, the secretary should refuse to accept such papers. However, if these different papers are substantially in the form and substance provided by the statute, it is no part of the duty of the Secretary of State to go further. In other words, it is not a part of his duty to pass upon the qualifications of the signers or the person who certifies to the papers. The statute nowhere makes it his duty. What he may do under the statute is purely ministerial and in no sense judicial in its character. What was said by this court in *Abbey* v. *Green,* 28 Ariz. 53, 64, 235 Pac. 150, 154, with reference to the duties of the board of supervisors when a recall petition is filed, applies equally to the duty of the Secretary of State when nomination papers are filed with him. We said:

"We think there can be no question but that there was a mandatory duty on the part of the board of supervisors, when the petition for the recall of plaintiff was filed with it, containing signatures of the necessary percentage, to pass upon the sufficiency of such petition. The board could not know from the face of the petition whether all the signatures thereon were genuine, nor could they know from an inspection of the petition that some of the signatures were fraudulent, if there were such; but they could properly presume *prima facie* that all the signatures thereon were genuine and made in good faith, and that presumption would continue until positive proof to the contrary was seasonably made to appear."

It will be noticed that the same form of nomination paper is prescribed for use by a candidate for a state-wide office, or subdivision of the state greater than a county, as for a county or municipal election. The residence to entitle one to a vote at an election in these different electoral units is not the same. While a person showing his residence to be outside a municipality clearly would not be entitled to vote

or to be counted on a nomination paper for a city office, he would for a county or state office. The clear purpose of the statute in requiring the signers of. nomination papers to give "Name of city or post office" and "Street No." is, not that such data will show the signer to be a qualified elector, but that if any question should subsequently arise as to his right to vote he may readily be located. *Abbey* v. *Green, supra.*

The provision in section 7, chapter 62, Laws of 1933 (quoted above), requiring the county recorder to remove the stub from an affidavit of registration and "transmit the stub to the Secretary of State," also the provisions of chapter 94, Laws of 1935, supplemental thereto, are silent as to what the latter shall do with such stub or with certificates of cancellation. In such chapters there is no provision requiring the Secretary of State "to compile a card index of all the registered voters of the State of Arizona in alphabetical order so that the giant task of checking the signatures of nomination papers with the list of registered voters of the state may be accomplished in time so that the Secretary of State may certify to the various boards of supervisors the names of those candidates who are entitled to have their names printed on the official primary ballot." Nor is there any provision elsewhere in the laws of the state requiring the Secretary of State to perform that duty.

In *Ahrens* v. *Kerby,* 44 Ariz. 269, 337, 37 Pac. (2d) 375, it was held that a qualified elector is one who has complied with the registration laws. The plaintiff states:

"Applying this rule to nomination papers, the signers of nomination papers, in order to be qualified

to sign, must have registered as a voter prior to their signing such papers. Otherwise, they are not qualified electors within the meaning of section 1277 (R. C. 1928).''

That statement is quite correct  It is not for the Secretary of State to determine the question of qualification of voters; that is, rather, a matter for the courts when properly presented to them.

Article 10, chapter 22, *supra,* providing for primary elections, nowhere in direct terms makes it the duty of the Secretary of State to certify to the different boards of supervisors of the counties the names of persons who have qualified thereunder, to entitle their names to be printed on the official ballot. The legislature has evidently inadvertently omitted to insert a provision placing that duty upon the secretary. However, the secretary, as we read the complaint and memorandum of authorities, admits that it is his duty to so certify persons who have qualified before the primary. The apparent defect in the law has existed ever since statehood. Notwithstanding, every Secretary of State has conceived it to be his duty to certify the names of candidates who have conformed with the law to the different boards of supervisors. The nearest direction to the secretary to certify such names is found in section 1745, Revised Code of 1928, concerning the initiative, referendum and recall, which reads:

''The secretary of state at the time he furnishes to the clerks of the boards of supervisors of the several counties certified copies of the names of the candidates for state and other offices, shall furnish to each of said clerks his certified copy of the titles and numbers of the several measures and proposed amendments to the constitution to be voted upon at the ensuing regular general election.''

In this the legislature recognizes the duty that the secretaries have uniformly performed since statehood.

The negative provision in section 1287, that a candidate failing or refusing to file the complete, itemized, verified statements of his expenses shall not receive a certificate of nomination until such reports are filed, implies that one who complies with the law shall receive such certificate. The correlative duty placed upon the Secretary of State by section 1283 to issue the certificates of nomination to the nominees at the primary election as to all offices voted upon by the electors of the entire state, or of a district or subdivision thereof larger than a county, would imply, we think, that the Secretary of State should issue certificates to persons who had filed the necessary papers in substantial compliance with the statute to entitle them to have their names printed upon the primary ballot, and certify their names to the different boards of supervisors of the state.

The contention that the Secretary of State should first satisfy himself that the signers of nomination papers of a candidate for the primary are legally registered voters before certifying such candidate to the several boards of supervisors is not tenable. If the candidate's papers are regular in form, or substantially so, and if the signers on his nomination papers are equal to the percentage prescribed, and such papers are presented within the required time, it is the duty of the Secretary of State to certify such candidate's name to the several boards of supervisors so that he may be on the official ballot.

The primary is in lieu of the old party convention for nominating candidates and should be, and we believe very generally is, liberally construed in favor of those of our citizens desiring to run for

office. The frame of our primary law indicates that it was not the intention of the legislature to leave it with the Secretary of State, a mere ministerial officer, to determine the validity of a candidate's papers when on their face they substantially comply with the terms of the statute. It is contemplated, however, that the candidates shall conform with the primary law, for in section 1284, *supra,* it is provided that their names shall not be printed on the official ballot at the general election unless they have fully complied with the primary law. The question as to whether they have complied is clearly one for the courts when properly presented by interested parties.

■ It will be noted that the plaintiff in its complaint states that no appropriation had been made to pay for voters' registration cards, and that it therefore made its claim against the general fund. We have repeatedly held that no moneys can be paid from the state treasury without a legislative appropriation. The legislature of the state holds the purse strings and it only can authorize the expenditure of the state's moneys.

As stated at the beginning of this opinion, the state auditor was entirely within the law when she refused to audit and allow the plaintiff's claim.

LOCKWOOD, C. J., and McALISTER, J., concur.