[Civil No. 4318.   Filed October 2, 1940.]

[105 Pac. (2d) 962.]

MORRIS GRAHAM, Individually, as a Member of, and as State Secretary of the Communist Party of the United States of America, in and for the State of Arizona, and on Behalf of All Members of Said Communist Party in the State of Arizona, Plaintiff, v. HARRY M. MOORE, Individually, and as Secretary of State of the State of Arizona; and the Clerks of the Boards of Supervisors of the Fourteen Counties of the State of Arizona, Defendants.

Messrs. Andersen & Resner, of San Francisco, California, for Plaintiff.

LOCKWOOD, J.—Morris Graham, individually, as a member of and as State Secretary of the Communist

Party of the United States of America, in and for the State of Arizona, and on behalf of all members of said Communist Party in the state of Arizona, hereinafter called plaintiff, has filed a petition in this court for an alternative writ of *mandamus* against Harry M. Moore, individually, and as Secretary of State of the State of Arizona, hereinafter called defendant, and against the clerks of the boards of supervisors of each of the fourteen counties in Arizona, asking for a writ of *mandamus* requiring defendant "to certify and recognize, or certify or recognize the Communist Party as a new political party in the State of Arizona at the forthcoming general election in said State, to be held on November 5th, 1940," and requiring the said clerks of the boards of supervisors "to place the name of the said Communist Party on the ballots printed by them, as well as to place the names of the candidates of said Communist Party upon said ballots."

We consider first the question of jurisdiction. This is governed, so far as original jurisdiction is concerned, by section 4 of article VI of the Constitution of Arizona, which reads, so far as material, as follows:

"The Supreme Court shall have original jurisdiction in *habeas corpus,* and *quo warranto* and *mandamus* as to all State officers. . . .

"The Supreme Court shall have original and exclusive jurisdiction to hear and determine all causes between counties concerning disputed boundaries and surveys thereof, or concerning claims of one county against another. . . . "

With the exception of the issuing of writs of *habeas corpus,* all other jurisdiction of this court is merely appellate and revisory. We think, therefore, that so far as the clerks of the various boards of supervisors are concerned, we are without jurisdiction to

hear an original petition for *mandamus* against them. Such petitions must be initiated in the superior court, and our jurisdiction thereover is appellate and revisory only. We do, however, have jurisdiction of proceedings in *mandamus* against defendant, who is the duly qualified, elected and acting secretary of state, and we consider the petition, therefore, solely so far as it seeks relief against him.

The writ of *mandamus* is an extraordinary and expeditious legal remedy which proceeds upon the assumption that the applicant has an immediate and complete legal right to the thing demanded. *Campbell* v. *Hunt*, 18 Ariz. 442, 162 Pac. 882. As against public officers in particular, it is issued only to compel the performance of an act which the law especially enjoins as a duty arising out of the office. *Territory* v. *Board of Supervisors*, 2 Ariz. 248, 12 Pac. 730. If such officer is not specifically required to perform the duty or has any discretion as to what shall be done, the writ does not lie. *Collins (Board of Supervisors)* v. *Krucker*, (Ariz.) 104 Pac. (2d) 176. We, therefore, consider whether the allegations of the petition show affirmatively that defendant has refused to perform some act which the Constitution or the statute specifically requires of him, as secretary of state, to do. If he has so refused, the writ should issue. If he has not, it should be denied.

It is admitted frankly by petitioner that he bases his petition solely on the provisions of section 1278, Revised Code of 1928, which reads, so far as material, as follows:

"*Placing political parties on ballot; new parties.* A political organization which, at the last preceding general election shall have cast five per cent of the total vote in the state for its candidates, or of a subdivision thereof in which a candidate seeks nomination of such political organization for a local or county office, shall

be entitled to representation on the official ballot as a political party. Whenever a petition signed by a number of qualified electors equal to at least two per cent of the votes cast for governor at the last preceding general election in at least each of five counties of the state, shall be filed with the secretary of state, verified by the affidavit of ten qualified electors of the state, asking that the signers thereof be recognized as a new political party, *they shall be so recognized* and such party shall be represented by an official ballot at the ensuing primary election and on the succeeding general election. . . . '' (Italics ours.)

In his petition he alleges that a petition, signed by two per cent. of the votes cast for governor at the last preceding general election in at least five counties of the state, and verified by the affidavit of ten qualified electors of the state, asking that the signers thereof be recognized as a new political party under the name of ''Communist Party of Arizona,'' was duly filed with defendant as Secretary of State of the State of Arizona. There is no contention that defendant in any manner refused to accept and file such petition. In fact, the petition alleges that at the time of the filing plaintiff was advised by the assistant secretary of state that the Communist Party had duly qualified as such political party within the state of Arizona. The petition further proceeds, however, to allege that said defendant ''has refused and still refuses to recognize such party . . . as a new political party, and has refused and still refuses to give said political party representation on the official ballot of the State of Arizona at the ensuing general election to be held on the 5th day of November, 1940.''

There is no allegation in the petition showing in what manner defendant has refused to recognize such party. In fact, the allegations imply that defendant, through his assistant, has given such recognition to it. It is alleged that defendant refused to give the

party representation on the official ballot of the state, but under our statute the secretary of state has nothing whatever to do with the preparation of the official ballots used at either the primary or the general elections held in Arizona. This is a duty imposed by law entirely upon the boards of supervisors of the fourteen separate counties of the state (sec. 1193, Rev. Code 1928), and, as we have pointed out, we have no original jurisdiction to control their actions by *mandamus*. The petition, however, in paragraph eighteen thereof does request that defendant be required to "officially recognize said Communist Party of Arizona as a new political party in said State and certify said recognition in writing to said Communist Party and notify the Clerk of the Boards of Supervisors of each county in the State of Arizona," and this is the only affirmative action that we are requested to command defendant to perform.

Upon an examination of section 1278, *supra,* we do not find any provision requiring defendant, in his official capacity, to certify to anyone, much less to the boards of supervisors or their clerks, that he has officially recognized the Communist Party as a new political party in the state. Doubtless he must, if requested by anyone, furnish a certified copy of the petition for recognition above referred to, showing that he has filed it in his office as required by law, but beyond this, the statute does not point out any particular thing that he must do to show his recognition of such party. It may be true, as suggested by plaintiff, that in the past it has been the custom for the secretary of state to certify to the various boards of supervisors the names of the nominees of the different recognized political parties of the state so they may be placed upon the official ballots. The only provisions of law requiring this are sections 1283, 1745 and 1288, Revised Code of 1928. Section 1283 requires that after the boards of

supervisors have canvassed the votes in their respective counties, after a primary election, they shall make return thereof to the secretary of state, and "he shall canvass such return and issue the certificate of nomination to the nominees as herein provided, as to all offices voted upon by the electors of the entire state, or of a district or subdivision thereof, larger than a county, in the manner in which returns are made and canvassed at general elections."

Section 1745, *supra*, provides: "The secretary of state at the time he furnishes to the clerks of the boards of supervisors of the several counties certified copies of the names of the candidates for state and other offices, shall furnish to each of said clerks his certified copy of the titles and numbers of the several measures and proposed amendments to the constitution to be voted upon at the ensuing regular general election." *Sims Printing Co. v. Frohmiller,* 47 Ariz. 561, 58 Pac. (2d) 518.

There is no allegation, however, that there was any such return made by the boards of supervisors showing votes cast at the recent primary election for candidates of the Communist Party, and in the absence of such returns defendant certainly could not certify that any such candidates had been nominated, so that their names should appear on the ballots prepared by the boards of supervisors.

It is also true that if a vacancy appear in the list of candidates of a political party entitled to representation on the official ballot, *after* the primary election, these vacancies may be filled by the political party committee of the state, county or city "by filing the name of its candidate for such office with the officer with whom nomination petitions are filed, within twenty days after such primary, and when so filed, the name shall be placed upon the official ballot in the ensuing election as the party's candidate for such office." Sec. 1288, Rev. Code 1928. But there is

nothing in the petition to show the names of any candidates for the Communist Party were ever filed with defendant in accordance with this provision of the statute, within the time required thereby. Had such a list been tendered to him and had he refused to file it, a very different question would have arisen.

After a careful examination of the statutes, we are of the opinion the petition fails to show that defendant has refused to perform any duty imposed upon him by law. If, under the situation as shown by the petition, the boards of supervisors of the different counties neglect or refuse to provide a party column or to place the names of properly nominated candidates of the Communist Party upon the official ballot to be used at the general election in November, 1940, when the law requires them to do so, the remedy of plaintiff, if any, is by appropriate action in the superior courts of the different counties, and not by an original proceeding in this court.

It is urged by plaintiff that this rule compels a resort to a very expensive and cumbersome proceeding in order to secure effective official recognition of a political party by the various election officials. This may be true, but, assuming a better procedure could be devised, the remedy is legislative, and not judicial. The statutes do provide a method whereby any party, if it is legally entitled to have the names of its candidates placed upon the ballot, may have this done, and for an appropriate tribunal to enforce that right, and this is the method which must be followed.

The petition for the writ is, therefore, denied.

ROSS, C. J., and McALISTER, J., concur.