**170 P.2d 293**

**HUNT et al. v. SUPERIOR COURT IN AND FOR NAVAJO COUNTY et al.**

No. 4909.

Supreme Court of Arizona.

June 11, 1946.

Dodd L. Greer, Co. Atty., of Holbrook, for petitioners.

C. D. McCauley, of Winslow, for respondents.

MORGAN, Judge.

The facts in this case are not in controversy. Victor E. Westover and Bruce Gardner, within the time provided by law, filed petitions and nomination papers as Democratic candidates at the July 16 Primary, for Clerk of the Superior Court of

Navajo County. On May 6, Westover filed objections with the petitioners, members and clerk of the board of supervisors of said county, questioning the sufficiency of Gardner's nomination papers, upon the ground that although one hundred and ten persons had signed, nineteen were not qualified, and that in fact only ninety-one qualified electors had signed, eight less than ninety-nine, the number required by law. He demanded that Gardner's name be not printed on the ballot. This protest and demand was disregarded by the board. On May 31, Westover filed in the Superior Court of Navajo County, complaint and application for injunction to prohibit petitioners from printing Gardner's name upon the ballot. Hearing was set by the respondent court for June 5.

On June 4, petitioners presented to us their petition for writ of prohibition against the respondent, upon the ground that the court had no power to issue the injunction prayed for. The alternative writ was issued, with returnable date June 11. Respondent has answered that unless prohibited by this court, if the evidence discloses only ninety-one qualified electors signed Gardner's nomination papers, an injunction will be issued enjoining petitioners from printing Gardner's name on the ballot. If the superior court has power to do this, the writ should be discharged. If not, it should be made permanent.

The law does not specifically grant power to the courts to decide whether a nomination paper is sufficient. Ordinarily, since the question is of a political nature, the courts, in the absence of a statute expressly conferring such power, have no jurisdiction. 18 Am.Jur. 273, sec. 143, Elections. We have no statute expressly conferring jurisdiction on the courts to determine the validity of a nomination paper. We have held, however, that "the validity of a candidate's papers when on their face they substantially comply with the terms of the statute" is not for the ministerial officers but for the court. Sims Printing Co. v. Frohmiller, 47 Ariz. 561, 58 P.2d 518, 522.

The right of a candidate to have his name printed on the ballot is statutory. Such a petition must be signed by a sufficient number of qualified electors. A qualified elector is one who has complied with the election laws, and who is registered as a voter at the time he signs the petition. Ahrens v. Kerby, 44 Ariz. 269, 37 P.2d 375; Sims Printing Co. v. Frohmiller, supra. Since the right to nomination is statutory, and obviously no other adequate remedy exists, upon the application of an elector who has an interest, injunction is the proper remedy to restrain an election official or board from acting upon an invalid petition for nomination. Soper v. Jones, 171 Md. 643, 187 A. 833; In re Hylan, 242 App.Div. 260, 275 N.Y.S. 522, affirmed 265 N.Y. 607, 193 N.E. 342; Sterling v. Ferguson, 122 Tex. 122, 53 S. W.2d 753. Nor would section 26-104, ACA

1939, which prohibits the issuance of an injunction "* * * to prevent the execution of a public statute, by officers of the law, for the public benefit," prevent the court from enjoining the printing of candidate's name on the ballot after hearing and before the time allowed by law for such inclusion. In the late case of Crane Co. v. Arizona State Tax Commission, 63 Ariz. 426, 163 P.2d 656, we reviewed all prior cases construing this statute, and held, in effect, that notwithstanding its provisions, after hearing an injunction might issue if it appeared that the board was acting illegally or in excess of its powers.

■ Notwithstanding what has been said, it is the rule that the court may not enjoin an adminstrative board after the time the law imposes a mandatory duty upon it to perform the act. The injunction can issue only in advance of that time. Thus, a court of equity cannot prevent the certification of a candidate's name after the time arrives when it must be certified in order to be placed upon the ballot. If, by the law, within a certain period the board or officer is required to either certify the nomination or perform some other act which will allow the candidate's name to be printed on the ballot, it must be presumed that the board or officer has performed its or his duty, and that such act has been performed. This being so, a case to prohibit such action, brought after the time when the action had been or should have been performed, is moot. Sterling v. Ferguson, supra; Thomason v. Seale, 122 Tex. 160, 53 S.W. 2d 764; Iles v. Hargis, Tex.Civ.App., 120 S.W.2d 1094.

■ The real question here is whether the court had jurisdiction to hear the cause and issue an injunction on the proposed date of hearing, June 5. It appears from the facts in this case that Gardner's papers as filed with the board were signed by a sufficient number of names and that it was presumptively valid. In view of our holding in Sims Printing v. Frohmiller, to the effect that the validity of a nomination petition and questions pertaining to the qualifications of the signers, if the petition and nomination papers substantially comply with the law, the candidate is entitled to have his name certified or printed upon the official ballot, petitioners could not determine the questions raised. This would be a matter for the court. It was, therefore, the mandatory duty of the petitioners, upon the filing of such petition substantially in compliance with the law, to proceed to have his name printed upon the official ballot as required by the law.

■ We have no provision for the certification of nomination papers by the clerk of the board of supervisors or by the board. In order that a name may be placed on the ballot, the procedure provided in sections 55-1003, 55-1004 and 55-1005, ACA1939, must be followed. A nomination petition must be filed by the candidate. Nomination papers in the

form, signed and certified as required in section 55-1004, and bearing the number of signers as provided in section 55-1005, must be filed therewith. Substantial compliance with these sections gives the candidate the right to have his name appear on the ballot.

Before the amendment of section 55-1007, Id., by Laws 1944, 2d S.S., chap. 21, sec. 9, the law was that at least twelve days before the primary election, each clerk of the board of supervisors should prepare a sample official ballot and submit the same forthwith to the county chairman of each of the parties, who then had two days to examine the same. The official ballots had to be prepared ten days before the election.

▮▮▮ By the 1944 Act, subdiv. (b) to section 55-1007 was added, and reads as follows: "Provided that during the war the sample official ballots provided for in subdivision (a) shall be prepared by each clerk of the board of supervisors at least seventy-five days before the primary election, and the county chairman shall make his suggested changes to the clerk at least seventy-three days before the primary election."

This law is still in effect, the state of war not having been declared ended. Thus the step which is equivalent to certification, the printing of the names on the official ballot, must now be performed by the clerk of the board of supervisors not less than seventy-three days prior to the primary, instead of ten days as theretofore provided. We must assume that this has been done and the official ballot already printed, or prepared with Gardner's name included thereon.

Section 55-1303.1, Laws 1944, 2d S.S., chap. 21, sec. 12, provides that ballots for electors in the military service shall be identical in context with the regular official ballots, with certain exceptions not material here. This act further provides that the officer charged by law with the duty of preparing the ballots for the election shall prepare such official military service ballots and deliver a sufficient number to the recorder not less than sixty days prior to the primary.

▮▮▮ It would seem from the above provisions, since the military ballot must be the same as the regular official ballot, that no candidate could have his name printed on the ballot unless it were so included therein seventy-three days before the primary, and in no event less than sixty days. This would mean not later than May 15. Obviously, there could not be one kind of a ballot for those in the military service, and a ballot with other or different names for those not in the military service. The preparation and printing of the official ballot being equivalent to a certification and a necessary predicate for any candidate to have his name placed upon the official ballot, it would appear that the petitioners have already acted. Under the mandatory provisions of

the law, Gardner's nomination petition being a prima facie and a substantial compliance with the statute, it was the duty of the petitioners to include his name with other candidates. The action brought by Westover on May 31, and the proposed action by the court on June 5, concerned a matter which under the law is moot. The court had no jurisdiction to entertain the action or to issue an injunction or prohibit an official act which had already been accomplished.

The alternative writ heretofore issued is made permanent.

STANFORD, C. J., and La PRADE, J., concurring.