271 P.2d 472

ADAMS v. BOLIN, Secretary of State.

No. 5933.

Supreme Court of Arizona.

June 1, 1954.

Leslie C. Hardy, Whitney, Ironside & Whitney and Frank E. Flynn, Phoenix, for plaintiff.

Ross F. Jones, Atty. Gen., and Alfred B. Carr and Eldon R. Clawson, Asst. Attys. Gen., for defendant.

**UDALL, Justice.**

This is an original petition by L. S. "Dick" Adams, designated as plaintiff but herein referred to as petitioner, seeking a writ of mandamus to require Wesley Bolin, Secretary of State, designated as defendant but herein referred to as respondent, to accept certain nomination papers tendered by petitioner, who is a candidate at the primary election to be held on September 7, 1954, for the Democratic nomination by said party for the office of representative in Congress, First Congressional District of Arizona. The respondent's letter, dated May 17, 1954, refusing to file said nomination papers, gives as the reason that they do not comply with Section 55–1004(a), A.C.C.1939, as amended by Chapter 123, Laws 1952, section 21 thereof.

The Attorney General, representing respondent, appeared before us on the date the petition was filed and waived notice of the filing and preliminary notice of application for writ, as required by Subdivision 4, Rule 2, as amended, Rules of Supreme Court. It being represented to us that time was of the essence and the matters involved were of great public interest, particularly to every party member who aspired to be a candidate for public office in Arizona this election year, an alternative writ was issued.

318

■ The respondent being a state officer, this court has original jurisdiction to issue the writ under the provisions of Section 4 of Article VI of the Constitution of Arizona. See Graham v. Moore, 56 Ariz. 106, 105 P.2d 962. Return has now been made and answer filed. Counsel representing each of the parties having filed briefs and waived oral argument, the matter was ordered submitted for decision.

The primary question involved is as to the legal sufficiency of petitioner's nomination papers. It is the contention of the respondent that the petitions attempted to be filed with him by petitioner were defective in that they were not in the exact form prescribed by statute, in that no precinct was named therein and electors of different precincts had signed on the same nomination sheet and the signers had not designated their precinct by its particular name. It is the position of the petitioner that substantially they meet the requirements, and that a substantial compliance with the form prescribed is all that is required, and he asserts that the petitions presented by him fully meet this standard.

The Twentieth Legislature in its Second Regular Session, enacted House Bill No. 206, which now appears as Chapter 123, 1952 Session Laws Arizona. Section 21 of this Act amended Section 55–1004, A.C.A. 1939, and in subdivision (a) thereof is contained the revised form of Nomination Papers, viz.:

" 'I, the undersigned, a qualified elector of the [1] ——— precinct of the county of [2] ———, state of Arizona, and a member of [3] ——— party, hereby nominate [4] ———, who resides at [5] ———, in the county of ■ ———, for the party nomination for the office of [7] ———, to be voted for at the primary election to be held [8] ———, as representing the principles of said party, and I declare that I have not signed, and will not sign, any nomination paper for more persons than the number of candidates necessary to fill said office at the next ensuing election.' Names of signers; name of city or post office; street number; date of signing."

(Note: We have added the bracketed numerals appearing in the blank spaces for subsequent reference.)

It is to be noted there are no express restrictive instructions as to what is to be put or may not be put, in the blank spaces.

The nomination papers circulated by petitioner for signatures of electors and then presented to respondent *are in the exact form of the statute,* supra, save that in blank space (1), supra, there was inserted the words "hereinafter designated" instead of the name or number of a particular precinct. Since each signer of the petition must state his address, this effectively indicates his precinct. It is conceded that blank spaces numbered 2 to 8 inclusive, su-

pra, were properly filled in. It is also not disputed that petitioner obtained and tendered petitions containing in the aggregate more than the minimum number of signatures of qualified electors required by law, and that petitioner possesses the necessary qualifications to be a candidate for the office sought. The petitioner alleged that he would, within the time allowed by law, sign and file with respondent, the candidate's nomination petition required by Section 55–1003, A.C.A.1939, as amended by Chapter 123, Laws 1952. The answer denies this because of insufficient information upon which to form a belief as to its truth or falsity.

Insofar as the sufficiency of the petitions is concerned, the issue narrows down to respondent's contention that the legislature intended that the name of a particular precinct be inserted in the blank space preceding the word "precinct" at (1), and that *only* electors residing within the named precinct *might sign that particular nomination paper.*

As a basis for his strict construction the respondent heavily relies upon the fact that the legislature, in passing the 1952 amendment to Section 55–1004, supra, which prescribes the form of nomination paper, states it shall be " * * * in the following form: * * *", and later, in paragraph (b) thereof, provides that "No signature shall be counted unless it is upon a sheet having at the top thereof the form prescribed in subsection (a). * * *", whereas it is pointed out the statute prior to the amendment read:

" * * * which shall be *substantially* in the following form: * * *." (Emphasis supplied.) It appears the Twentieth Legislature, in adopting Chapter 123, supra, was undertaking a major overhaul of the general and primary election laws, and the change was in no sense limited to dropping this particular word. In all some 25 sections of the election code were amended. The bill (H.B. 206) to accomplish this purpose was introduced by the Committee on Suffrage and Elections, and the above change appeared in the bill as originally introduced. (Reference to the journals of the Senate and House, of which we take judicial notice, makes no mention of this specific change as the measure moved through the legislative process.) Be that as it may the fact remains the form of petition used by the petitioner is, insofar as the printed words are concerned, *identical* with the amended form; it has not been changed one *jot or tittle,* and all that was done was to insert in the first blank space (1) the words "hereinafter designated" before the word precinct instead of naming a particular precinct.

In support of his contention that the legislature never intended to prohibit qualified electors residing in different precincts (or in the case of a candidate for state office, different counties), from signing the same nomination paper, the petitioner calls our attention to this part of subdivision (b) of Section 55–1004, as amended by Section 21 of the 1952 Act, Chap. 123, supra, viz.:

" * * * To each nomination paper shall be appended a certificate by a qualified elector entitled to vote for the candidate whose nomination paper he certifies, stating that to the best of his knowledge and belief all signers thereof are qualified electors *of the precinct given as their residence,* * * *."* (Emphasis supplied.)

It is fundamental that statutes are not interpreted piecemeal. The statute as a whole would indicate that the legislature considered the important thing was the specific address from which the identification of the elector's precinct would be readily apparent to those who had occasion to check it. It should also be remembered that in the larger centers, with a fast-growing population, the boards of supervisors are frequently changing both the name and boundaries of election precincts, so that many voters, otherwise well informed, might not be able to give the name of the precinct in which they reside.

As we stated in Hicks v. Krigbaum, 13 Ariz. 237, 108 P. 482, 485:

" 'In the construction of a statute, it is the intent and purpose of the law, not the letter, that must control, and the whole statute must be considered.' Leibes v. Steffy, 4 Ariz. 11, 32 P. 261."

Let us consider the underlying philosophy and purpose of requiring nomination papers (commonly called nominating *petitions).*

Among the more important functions of the political party is that of supplying candidates for office for the general election. The selection of these candidates is usually done by intra-party caucus, convention, or by primary election, the latter method being used in Arizona. To have one's name printed on the ballot for a primary election, some states require simple filing by the candidate, others require a fee, while many, including Arizona, require nominating petitions signed by a certain number of qualified electors. Thus, broadly speaking, what a primary election is to the general election, the nominating paper is to the primary election. The political theory is that the nominating paper is a mechanism which in some measure weeds out the cranks, the publicity seekers, the frivolous candidates who have no intention of going through with the campaign, and those who will run for office as a lark if there is no difficulty in being placed on the ballot. A candidate meeting the onerous requirements demonstrates that he is a bona-fide office seeker entitled to a place on the ballot. The problem is to strike a balance, to make the requirements stringent enough to discourage those who do not for an instant merit the voter's consideration, yet not keep out those who are serious in their efforts and have a reasonable number of supporters. Those who sign the petitions, in effect, are recommending or proposing the candidate therein named as a suitable person to hold public office. For references on this general sub-

ject see: Annotation L.R.A.1915B, 197; Election Administration in the United States, Joseph P. Harris, Brookings Inst., (1934), pp. 72–77, 165–170; Political Parties and Electoral Problems, 3d ed., Robert C. Brooks, Harper & Brothers, (1933), Ch. 10; Short Ballot Principles, Richard S. Childs, Houghton Mifflin (1911), Ch. 11; Introduction to American Government, 10th ed., Frederic A. Ogg and P. Orman Ray, Appelton-Century-Crofts (1951), pp. 210–218; State and Local Government, William Anderson and Edward W. Weidner, Henry Holt & Co. (1951), Ch. 11; State Government, Frank G. Bates and Oliver P. Field, Harper & Brothers (1928), pp. 98–102; and 29 C.J.S., Elections, §§ 89–114.

The purpose of requiring the signer to give his city or post office, street address, and date of signing, is to provide a means of identifying him as a person entitled to sign such petition and prevent forgeries of names, as well as to indicate the precinct in which he lives. The essence of the nominating procedure is that qualified persons sign the petitions; the exact form of the sheet on which they sign is relatively unimportant. The practice adopted by petitioner has been followed in Arizona these many years with no apparent ill effect. We cannot conceive of any purpose that would be served by requiring the voters from different precincts to sign different petitions, nor has any been suggested to us. Such a requirement is unrelated to the functions of

the nominating petition, yet if we adopt respondent's interpretation of the statute in question, this requirement must be met, and compliance with it would be so burdensome that the average candidate would have difficulty in meeting it. Thus, when we consider the purpose of the law, every intendment is against the construction urged by respondent.

We believe that the duty enjoined upon us by Section 1–101, A.C.A.1939, " * * * Statutes shall be liberally construed, to effect their objects and to promote justice. * * * ", is applicable here. We stated in the case of Sims Printing Co. v. Frohmiller, 47 Ariz. 561, 571, 58 P.2d 518, 522, in a related matter:

"The primary is in lieu of the old party convention for nominating candidates and should be, and we believe very generally is, liberally construed in favor of those of our citizens desiring to run for office. * * * "

And in Hunt v. Superior Court, 64 Ariz. 325, 170 P.2d 293, 296, in referring to Sections 55–1003, 55–1004 and 55–1005, A.C.A. 1939, here under review (prior to their amendment), we stated:

"Substantial compliance with these sections gives the candidate the right to have his name appear on the ballot."

We find that as to this phase of the election laws the authorities, texts and the reported cases are practically unanimous in

322

holding that such laws should be given a liberal interpretation. See: 29 C.J.S., Elections, § 111, d.; 18 Am.Jur., Elections, §§ 11 and 120. We believe the paramount right to propose a nominee is of such gravity as to outweigh purely technical departures from nominating form. We are sure the legislature intended to facilitate rather than to subvert and impede the exercise of the right to nominate, and rather than to construe the law to impose such burdensome and unreasonable requirements as practically to deny the right of nomination we conceive it to be our duty to give this law a workable and reasonable construction.

In the light of what has been said we have no hesitancy in holding that the "nomination papers" presented to respondent were legally sufficient and a refusal to accept them as being defective, in that they did not comply with Section 55–1004, as amended, supra, was not justified. We further hold that filling in the blank space on the form prescribed by statute, with the words "hereinafter designated" before the word "precinct" (or words of similar import such as "the precinct *designated* or *indicated* by my address") is full compliance with the intent and purpose of the statute, and that there is no legal impediment prohibiting qualified electors from different precincts signing the same "nomination paper".

However at the eleventh hour the respondent has raised a point that was not urged prior to the issuance of the alternative writ, which is fatal to petitioner's request for a peremptory writ of mandamus. Our attention is called to the fact that the law, Sections 55–1003 and 55–1004, A.C.A. 1939, as amended by Chapter 123, Laws of 1952, Second Regular Session, requires that nominating petitions of candidates and the nomination papers signed by electors be filed with respondent " * * * *not less than fifty days nor more than ninety days before* such primary election * * *", whereas in the instant matter the petitions were tendered 23 days prematurely, i. e., 113 days prior to the primary election. Petitioner seeks to avoid the impact of this requirement by asserting that he is tendering the papers to respondent with the request that they be accepted and held for later filing within the statutory period. In the case of Sims Printing Co. v. Frohmiller, supra, 47 Ariz. 561, 567, 58 P.2d 518, 521, it was stated:

"* * * of course, if the nomination petition, for instance, should be presented to the secretary more than ninety days or less than forty days before the primary * * * the secretary might well refuse to accept it. * * *"

The governing principle of law as to when a writ of mandamus issues is well stated in the case of Graham v. Moore, supra, 56 Ariz. 106, 109, 105 P.2d 962, 964.

"The writ of mandamus is an extraordinary and expeditious legal remedy which proceeds upon the assump-

tion that the applicant *has an immediate and complete legal right to the thing demanded.* Campbell v. Hunt, 18 Ariz. 442, 162 P. 882. As against public officers in particular, it is issued only to compel the performance of an act which the law especially enjoins as a duty arising out of the office. Territory [ex rel. Sherman] v. Board of Supervisors, 2 Ariz. 248, 12 P. 730. If such officer is not specifically required to perform the duty or has any discretion as to what shall be done, the writ does not lie. Collins (Board of Supervisors) v. Krucker, [56] Ariz. [6], 104 P.2d 176. * * *" (Emphasis supplied.)

Applying these principles to the facts here it becomes apparent that a peremptory writ of mandamus cannot properly issue in the instant case as respondent was under no duty to accept and hold the petitions for later filing. For a comparable precedent, see Earhart v. Frohmiller, 65 Ariz. 221, 228, 178 P.2d 436.

For this reason *only* the writ is denied. The alternative writ of mandamus is quashed.

STANFORD, Acting C. J., and La-PRADE and WINDES JJ., and NICHO-LAS UDALL,* Superior Court Judge, concur.

---

\* Upon presentation of the petition for the writ, Chief Justice Marlin T. PHELPS announced his disqualification, and the Honorable Nicholas UDALL, one of the Judges of the Superior Court of Maricopa County, was called to sit in his stead.