297 P.2d 624

STATE of Arizona, ex rel. Robert MORRI-
SON, The Attorney General of the
State of Arizona, Petitioner,

v.

Frank E. THOMAS, Judge of the Superior
Court of the State of Arizona, in and for
the County of Maricopa, Respondent.

No. 6121.

Supreme Court of Arizona.

May 14, 1956.

Robert Morrison, Atty. Gen., Harmon S. Puckett, Asst. Atty. Gen., and Jack G. Marks, Sp. Asst. Atty. Gen., for the State.

James E. Flynn, Jack Choisser, Moore & Moore, and Richard P. Meason, Phoenix, for respondent.

LA PRADE, Chief Justice.

This is an original proceeding in certiorari, initiated by an application of the State of Arizona, on relation of its Attorney General. The State seeks to have the judgment entered by Frank E. Thomas, sitting as a Judge of the Superior Court, in and for the County of Maricopa, granting a liquor license to one Mary Lou Brown, and the license issued by Mr. Duncan, Superintendent of the Department of Liquor Licenses and Control, pursuant to said judgment, declared to be null and void. Respondent moved to quash the writ. On application fourteen similar writs were issued. By stipulation the fifteen cases (6118, 6121 to 6134, both inclusive) were consolidated as each presented identical questions of law. This opinion and decision is determinative of each of said cases.

On June 16, 1955, the Superintendent of the Department of Liquor Licenses and Control of the State of Arizona denied an application for a Series No. 6 spirituous liquor license to Mary Lou Brown on the ground that the issuance of such a license would exceed the quota set by statute. Mary Lou Brown appealed that decision to the Superior Court where, after a trial de novo, the court reversed the Superintendent and ordered him to issue the license.

After the above judgment was rendered no attempt was made by the Superintendent to secure a review of such decision by this court. Mr. Robert Morrison, the Attorney General, asked Mr. Duncan to sign the necessary papers required for an application for a writ of certiorari in order to review the Superior Court's action. Duncan allegedly advised the Attorney General's office that he wished to have more time to think the matter over before signing the application. Later the Attorney General wrote Duncan requesting him to take immediate action. Morrison added that the failure of the Superintendent to take such action would be considered by him to mean that he, Duncan, did not wish to have the judgment reviewed and, therefore, the Attorney General himself would have to sign the necessary documents on behalf of the State. Duncan wrote Morrison on the same day stating that he was still studying the matter and had "not as yet decided to appeal". The application for the writ on behalf of the State was signed by Morrison in his capacity as Attorney General.

The State's contention is that the Superior Court Judge exceeded his jurisdiction in ordering the Superintendent to issue the license, and that since no appeal lies, certiorari is the only remedy available to it. Respondent argues (1) that the State as such is not a "party beneficially interested" in the original proceedings and therefore

has no right to a writ of certiorari; (2) that the Attorney General has no authority or power to act for the State in this situation, such power and authority residing exclusively with the Superintendent; (3) that the lower court correctly interpreted Section 72–107, 1952 Cum.Supp., A.C.A.1939, [A.R.S. §§ 4–206, 4–207], dealing with the establishment of liquor license quotas; and (4) that. even if the court erred in its construction of that section, such error did not constitute an act in excess of the court's jurisdiction and therefore certiorari does not lie.

At the outset it becomes necessary to determine whether the State has any standing to apply for this writ in the absence of permission or other affirmative action by the Superintendent. In other words, is the State precluded from taking action in a matter in which it has a great interest if one of its officers admittedly in charge of such matters refuses or fails to pursue a particular course of action? Respondent contends that if the State wished to become a party to the original proceeding (Brown v. Duncan), it could have done so by seeking leave to intervene, and failure to have intervened now precludes the State from seeking a review. We cannot agree with this contention. The State of Arizona is a body politic, the very nature of which requires it to act through officers and agents. As a result every lawful action of its agents done within the scope of their authority is an act of their principal, the State of Arizona. Consequently, when the Superintendent appeared in court in the matter involving the issuance of a liquor license to Mary Lou Brown, he was acting in his official capacity and represented the State. Obviously, the State has a very direct interest in this matter since it involves the issuance of a license to deal in spirituous liquors, apparently in excess of the quota established by statute. The State was a party to that action just as much as it would have been had the cause been entitled Brown v. State of Arizona. Ford Motor Co. v. Department of Treasury of State of Indiana, 1945, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389; Pacific Fruit & Produce Co. v. Oregon Liquor Control Comm., D.C. Or.1941, 41 F.Supp. 175.

A situation somewhat similar to the one at bar arose in Louisiana during the 1930's when the State instituted an action through its Attorney General to recover certain mineral lands leased to the assignor of defendant by a previous Governor. The defendant argued that the State had no power to bring such an action unless it did so through the State Mineral Board, which had been given "full supervision of all mineral leases granted by the State", with the accompanying power to "institute any action to annul" such leases. A second defense was predicated on the principle that the Attorney General had no right to bring such an action without the permission of the State Mineral Board. The Supreme Court of Louisiana held that under the laws

of that State there was no question that the Attorney General had such power, but stated that the real question was not whether he had the power to bring the suit, but whether the State had the power, and that the latter question had not been properly raised. State v. Texas Co., 1942, 199 La. 846, 7 So.2d 161. Two years later this precise question was properly brought before the same court. This time the court held that since the State had had the power to sue or be sued in its own name as to matters concerning mineral leases before passage of the statute creating the State Mineral Board, it had not divested itself as sovereign of that right merely by setting up a special board to handle such matters. State v. Texas Co., 1944, 205 La. 417, 17 So.2d 569. The court stated its conclusion succinctly 17 So.2d at page 572 as follows:

"The State Mineral Board, by the statute, has been designated merely the agent of the state to supervise and handle that portion of its affairs which deals with the development of its lands for mineral purposes, and to this end the agent is permitted the right, concurrently with the principal (state), to institute actions in nullity. *The board may be likened to an agent of an individual property owner who (agent) has been granted full, but not exclusive, authority in the management and supervision of the owner's holdings, with power to bring suits respecting the property. In such case certainly the*

*owner has not precluded himself to institute all necessary actions."* (Emphasis supplied.)

Following this same reasoning we hereby hold that the State of Arizona, the real party in interest in matters of state concern, is not precluded by the non-action of its agent, the officer designated to supervise this aspect of the State's governmental powers, from seeking to have reviewed in this court the judgment rendered below.

The next question before this tribunal is whether the Attorney General has the right on behalf of the State to apply for the writ under the circumstances of this case. We have already determined that the State has the power to do so, but here the narrow question is whether the Attorney General can represent the State without the permission of the administrative officer whose department has been given the authority to handle such affairs generally. If this were a state in which the Attorney General possessed the common-law powers of the office there would be no need to make this inquiry since once the State had the power to sue, automatically the right and duty to represent the State in such a matter would fall upon the Attorney General. But in view of the fact that in this jurisdiction the Attorney General possesses only those powers granted to him by the Constitution and statutes, Shute v. Frohmiller, 1939, 53 Ariz. 483, 90 P.2d 998, we must look to them for the answer to this question. Section 9, Article 5 of the State Constitu-

tion states that the powers and duties of the Attorney General "shall be as prescribed by law". The pertinent sections of the code dealing with the Attorney General follow in part:

"4–607. Department of law (Organization).—(a) The department of law shall consist of the attorney general and the subdivisions of the department created as provided in this Act. Unless otherwise provided by law the department shall succeed to the powers and duties vested in and imposed upon the attorney general, and shall: 1. *Prosecute and defend in the supreme court all causes in which the state or an officer thereof in his official capacity is a party; 2.* at the direction of the governor or when deemed necessary by the attorney general, prosecute and defend any cause in a state court other than the supreme court in which the state or an officer thereof is a party or has an interest; * * *." (Emphasis supplied.)

"4–609. Powers and duties.—(a) The attorney general shall have charge of and direct the department of law, and shall serve as chief legal officer of the state. As such he shall be the legal advisor of the departments of state and render such legal services as the departments may require. He shall establish administrative and operational policies and procedures within his department, approve long range plans for developing departmental programs therein, and coordinate the legal services required by other departments of the state or other state agencies." 1954 Supp.A.C.A.1939, [A.R.S. §§ 41–193, 41–192].

 The most important of the above provisions insofar as this action is concerned is Section 4–607(a) (1), requiring the department of law to "prosecute and defend in the supreme court all causes in which the state or an officer thereof in his official capacity is a party". Since we have already decided above that the State under these circumstances has the right to apply for a writ of certiorari in this court it follows from Section 4–607(a) (1) that the Attorney General is the proper state official to institute the action. In so doing he acts as the "chief legal officer" of the State. Cf. Driscoll v. Burlington-Bristol Bridge Co., 1952, 8 N.J. 433, 86 A.2d 201, 222.

 Respondents argue that to hold that the Attorney General has such authority will make him a virtual dictator over other public officers insofar as establishing policies, operating the departments and making final decisions is concerned. This argument is without merit. There is nothing in the statutes or in this opinion which would give sanction to such a conclusion. The Attorney General has no right to make rules or regulations in the other departments in connection with their operation. But he may, like the Governor, go to the courts for protection of the rights of the people. This is a far cry from being a dictator, however, since it will be the courts alone who in all such cases make the final decisions and not the Attorney General.

■ We now come to the merits of the case. Superintendent Duncan denied Mary Lou Brown's application for a liquor license on the ground that the quota established by Section 72–107, supra, based on the 1950 federal census, prohibited the further issuance of such licenses. There is no dispute between the parties that if the Superintendent's interpretation of the law is correct no license could issue to Mary Lou Brown or the other applicants herein represented. Section 72–107(c) reads as follows:

"The population of a county shall be deemed to be its population at (as) last determined by the bureau of the census, less the number of Indian wards of the United States residing therein, as shown by such census."

The State contends that the term "shall be deemed" creates a conclusive presumption, while respondent argues that the words set up merely a rebuttable presumption, capable of being upset by any material and relevant evidence. Each side cites numerous cases in support of its contention, but none of them deal with a statute such as ours and, therefore, are of limited value. Although it must be conceded that a population figure arrived at only once every ten years is probably not entirely accurate a few years later, it does provide a definite yardstick. And no one has attempted to or can seriously question the authority of the legislature to set up such a standard for the issuance of liquor or any other type of licenses based on population. Obviously the effect of the statutory interpretation sought by respondent would render the entire subsection nugatory, since there would be no official figures upon which the Superintendent or the courts could rely and each applicant would be in position to bring in his own "experts" in order to substantiate his claims. We do not believe that the legislature meant to open such a Pandora's box of uncertainty, chaos and unending litigation. It is clear to us that in this context the words "shall be deemed" create a conclusive presumption.

■ The next question concerns the phrase "last determined by the bureau of the census". There is no dispute as to the meaning of "bureau of the census". The federal bureau which counts the population of this country had been called the Bureau of the Census for many years at the time of the enactment of the above section in 1935, so it is indisputable that this section refers only to that federal agency. The State contends that the term "last determined" refers solely to the 1950 census made by the federal bureau. Respondent argues that the estimate made by Mr. Meszaros, a representative of the Bureau of the Census, at the trial, based on factors and figures submitted by one Arthur Gutenberg, Director of the Bureau of Business Services at the Arizona State College, at Tempe, constitutes a "determination" of the bureau. We cannot agree with respondent. It is clear that the estimate made by Mr. Meszaros was not a determination by the

Bureau of the Census, and, therefore, of no legal significance. We are not called upon at this time to say whether a figure indicating the population of a county arrived at by the Bureau of the Census by some method other than nose-counting constitutes a "determination" under our statute. Nothing in this opinion should be construed to prohibit the use of figures resulting from the taking of a census by the Bureau of the Census at times other than every ten years. See State ex rel. Brubaker v. Brown, 1955, 163 Ohio St. 241, 126 N.E.2d 439.

The next point concerns the availability of the remedy of certiorari under the circumstances of this case. Actually this question is divisible into two parts: (1) was the remedy of appeal available to the State, and (2) if not, did the lower court exceed its jurisdiction in ordering the license to be issued when such issuance constituted a grant in excess of the quota permitted by statute?

■ Prior to the year 1954 when the Administrative Review Act, Section 4–901, et seq., 1954 Supp.A.C.A.1939 [A.R.S. § 12–901 et seq.], was passed it was well settled that there was no right of appeal to this court from a judgment in the Superior Court reviewing a decision of the Superintendent of the Department of Liquor Licenses and Control "in any matter relating to the issuance, renewal, suspension, or revocation of a license". Section 72–109(c), A.C.A.1939 [A.R.S. § 4–210]. Him Poy Lim v. Duncan, 1947, 65 Ariz. 370, 181

P.2d 357. It remains to be seen whether the Administrative Review Act, supra, altered this situation. Section 4–903(a), which answers this question, reads as follows:

"This Act shall apply to and govern every action to review judicially a final decision of an administrative agency except where the act creating or conferring power on such agency or a separate act provides for judicial review of the agency decisions and prescribes a definite procedure for such review."

Inasmuch as Section 72–109, 1952 Cum. Supp.A.C.A.1939, provides for review of decisions of the Department of Liquor Licenses and Control by the Superior Courts and prescribes a definite procedure for such review, the Administrative Review Act by its own terms does not apply. Consequently, there is still no right of appeal to this court from the Superior Courts in cases like the one at bar.

■ Lastly, we arrive at the question of whether the judgment of the court below in ordering the Superintendent to issue a license to Mary Lou Brown when such license would exceed the quota established by statute constituted an act in excess of that court's jurisdiction. This court has already held that the issuance of a license by the Superintendent of the Department of Liquor Licenses and Control in excess of those permitted by the statutory quota constituted an act in excess of said official's jurisdiction, and that as a result cer-

tiorari would lie. Mayberry v. Duncan, 1949, 68 Ariz. 281, 205 P.2d 364. Unless there is an essential difference as far as the number of liquor licenses permitted by law, between the statutory restrictions imposed on the Superintendent and those imposed on the Superior Courts in hearing appeals from the Department of Liquor Licenses and Control, we believe the Mayberry case to be controlling. Respondent has not indicated any such distinction exists. We have discussed the question of jurisdiction on several recent occasions, pointing out that if a court construes a statute conferring only a limited jurisdiction upon it so as to exercise a power not authorized such a construction is jurisdictional. Arizona Public Service Co. v. Southern Union Gas Co., 1954, 76 Ariz. 373, 265 P.2d 435. In Duncan v. Truman, 1952, 74 Ariz. 328, 248 P.2d 879, 882, we said:

"By its very nature a writ of certiorari never issues to correct mere error committed by a lower tribunal, but, as our statute on certiorari, supra, indicates, an entire absence of power to hear or determine the case is not required. A broader basis for granting the writ is recognized in those cases where jurisdiction has been exceeded. The word 'jurisdiction' has different shades of meaning and as applied to certiorari and prohibition matters it should not be given a too restrictive meaning. For an excellent dissertation on the subject see Abelleira v. District Court, 17 Cal.2d 280, 295, 109 P.2d 942, 132 A.L.R. 715, 721."

Section 72-107 permits the issuance of a limited number of licenses and no more at any particular point in time. The granting of additional licenses beyond the maximum number permitted constitutes an act in excess of jurisdiction whether the issuance be by the Superintendent or by order of the Superior Court. We believe the Mayberry case is controlling here and, consequently, that certiorari is the proper remedy.

Respondent's motion to quash the writ is denied, and the judgment of the lower court is annulled, with directions to void the license issued pursuant thereto.

UDALL and PHELPS, JJ., concur.

STRUCKMEYER, Justice (dissenting).

I am unable to concur in the disposition of these cases because I do not think that the Attorney General is authorized to either initiate or maintain these actions.

The Constitution of this State establishes the executive offices of the Governor, Secretary of State, State Auditor, State Treasurer, Attorney General and the Superintendent of Public Instruction, Article 5, Section 1, and provides that the duties of the Attorney General "shall be as prescribed by law." Article 5, Section 9. Among the duties of the Attorney General prescribed by statute is the prosecution and defense of causes to which the State is a party.

Section 4–607, A.C.A.1939, as amended [A.R.S. § 41–193]. Plainly the statute contemplates that the Attorney General act as the legal representative of the people; so that, whenever the State is a party to a lawsuit, it is the Attorney General who must act as its lawyer. While there may be instances in which the Attorney General must exercise the faculty of judgment which the State as an artificial entity is unable to exercise and determine when an action should be instituted in the name of the State, I do not believe Section 4–607 was designed or intended to authorize the Attorney General to exercise the power of discretion placed by the Constitution and applicable statutes in other executive and administrative officers. Nor that it should be so construed that the ultimate power to decide matters pertaining to their offices is shifted to the Attorney General thereby giving him the right to supersede their judgments.

By statute the Superintendent of Liquor Licenses and Control has the duty of administering the Spirituous Liquor Act. He is not permitted the right of appeal from a judgment of the Superior Court. He may bring certiorari, Duncan v. Truman, 74 Ariz. 328, 248 P.2d 879. However, whether certiorari or any other legal action should or ought be taken is wholly within his sound discretion and could not be compelled by mandamus. Adams v. Bolin, 77 Ariz. 316, 271 P.2d 472. The determination of a discretionary matter by a public officer must be made in the light of the intimate knowledge of the needs, concerns and interests of the State, and upon the mature consideration and judgment of the officer having this knowledge and charged with the duty of administering the office. Since it is the Superintendent who has the duty of administering the Spirituous Liquor Act and he is the responsible officer charged with the obligation of exercising the judgment and discretion necessary to the proper functioning of the office, these actions should be dismissed as an attempted usurpation of the duties of the Superintendent of Liquor Licenses and Control.

While the majority opinion disavows the establishment of a rule by which the Attorney General can supersede the policies and decisions of various departments of government, this is exactly what has occurred here. The Attorney General has superseded the judgment of the Superintendent of Liquor Licenses and Control. Moreover, he is usurping the powers and duties of the office of Governor of this State. Were it possible to say that the Superintendent has abused his discretion in failing to litigate in this Court the jurisdiction of the superior courts, or even that the judgment of the Superintendent is so unsound as to require corrective action, then the Constitution and statutes of this State specifically charge the Governor with the obligation of taking appropriate action.

By Article 5, Section 4 of the Constitution it is provided: "The governor * * *

shall take care that the laws be faithfully executed." Among the powers and duties prescribed by statute the Governor "shall supervise the official conduct of all executive and ministerial officers;" and "He shall see that all * * * duties thereof (are) performed, or, in default thereof, apply such remedy as the law allows;" Section 4–101, A.C.A.1939 [A.R.S. § 41–101]. What official action the Governor might find necessary to take, if any, and what remedy the Governor might be disposed to pursue if in his discretion such were necessary, even to the extent of requiring the Attorney General to handle an action upon the relation of the Governor, is not necessary to be determined here. However, it is clear that it is the duty of the Governor and not the Attorney General to protect the interests of the people and the State by taking care that the laws are faithfully executed and in his sound discretion and in the manner that he deems advisable to that end supervise the official conduct of other executive and ministerial officers. The people through the Constitution and statutes have clothed the Governor with this power even to the extent of authorizing him to remove the Superintendent for "inefficiency, neglect of duty, malfeasance, misfeasance, or nonfeasance in office," Section 72–102, A.C.A.1939, as amended [A.R.S. § 4–111]. I therefore am compelled to the conclusion that the Attorney General is not the proper person to decide the course of action which should be pursued by another public officer, nor should he be allowed to maintain a lawsuit at his own instigation under the cloak and in the guise that the action is by the State of Arizona in order to accomplish the same result.

WINDES, J., concurs in the dissent of Justice STRUCKMEYER.