IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA, EX REL. MARK BRNOVICH, ATTORNEY GENERAL,
*Plaintiff/Appellant*,

*v.*

ARIZONA BOARD OF REGENTS,
*Defendant/Appellee.*

No. CV-19-0247-PR
Filed November 25, 2020

Appeal from the Superior Court in Maricopa County
The Honorable Connie Contes, Judge
No. CV2017-012115
**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

Memorandum Decision of the Court of Appeals, Division One
1 CA-CV 18-0420
Filed August 20, 2019
**VACATED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, Brunn "Beau" W. Roysden III (argued), Solicitor General, Joseph A. Kanefield, Chief Deputy and Chief of Staff, Evan G. Daniels, Drew C. Ensign, Robert J. Makar, Katherine H. Jessen and Dustin D. Romney, Assistant Attorneys General, Phoenix, Attorneys for State of Arizona

Paul F. Eckstein, Joel W. Nomkin (argued), Shane R. Swindle, Thomas D. Ryerson, and Austin C. Yost, Perkins Coie LLP, Phoenix, Attorneys for Arizona Board of Regents

William G. Klain (argued), Michelle H. Swann, Brian J. Pouderoyen and Jason A. Clark, Lang & Klain, P.C., Attorneys for Amici Curiae John A. "Jack" LaSota, Robert Corbin, Terry Goddard and Thomas Horne

Whitney DuPree, King & Spalding LLP, Atlanta GA; Paul Alessio Mezzina, King & Spalding LLP, Washington, DC; Matthew Warren, King & Spalding LLP, Chicago, IL, Attorneys for Amici Curiae Law Professors

Noel Fidel, Law Office of Noel Fidel, Phoenix, Attorneys for Amici Curiae Secretary of State and Superintendent of Public Instruction

Aaron M. Duell, Burch & Cracchiolo, P.A., Phoenix, Attorney for Amicus Curiae The James G. Martin Center for Academic Renewal

Dominic E. Draye (argued), Greenberg Taurig, LLP, Phoenix, Attorneys for Amici Curiae Governors of the State of Arizona

Brett W. Johnson, Colin P. Ahler, and Tracy A. Olson, Snell & Wilmer, L.L.P., Phoenix, Attorneys for Amici Arizona State Treasurer Kimberly Yee, Arizona Commerce Authority, Arizona Chamber of Commerce and Industry, Greater Phoenix Chamber of Commerce, Greater Phoenix Economic Council, Greater Phoenix Leadership, League of Arizona Cities and Towns, Arizona Chapter of NAIOP: The Commercial Real Estate Development Association, Southern Arizona Leadership Council, and Valley Partnership

————————————

JUSTICE BOLICK authored the opinion of the Court, in which VICE CHIEF JUSTICE TIMMER, JUSTICES GOULD, LOPEZ, BEENE, MONTGOMERY and JUDGE ESPINOSA joined.*

————————————

————————————

\* Chief Justice Robert Brutinel has recused himself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Philip G. Espinosa, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

JUSTICE BOLICK, opinion of the Court:

¶1         The Attorney General filed a lawsuit against the Arizona Board of Regents ("ABOR" or the "Board") alleging that (1) its tuition-setting policies violate article 11, section 6 of the Arizona Constitution and (2) subsidizing in-state tuition for students who are not "lawfully present" constitutes an unlawful expenditure of public funds.   The trial court dismissed the action, holding that the Attorney General lacked constitutional or statutory authority to litigate it, and the court of appeals affirmed.   We agree with those courts that the Attorney General is not authorized to proceed with the first set of claims, but we hold that the trial court erred by granting the motion to dismiss the latter challenge.

## BACKGROUND

¶2         The Attorney General's lawsuit against ABOR consists of six counts.  Counts I–V allege that the Board's policies violate the constitutional guarantee that instruction provided by Arizona postsecondary institutions "shall be as nearly free as possible."   Ariz. Const. art. 11, § 6.   Count VI alleges that by subsidizing in-state tuition for students who are not "lawfully present," ABOR violated A.R.S. §§ 15-1803(B) and -1825(A), failed to collect monies as required by A.R.S. § 35-143, and caused illegal payment of public monies in violation of A.R.S. § 35-212.   The initial complaint requested declaratory, injunctive, and special action relief.   The Attorney General subsequently amended his complaint to seek recovery of illegally spent public monies.   The trial court dismissed the complaint with prejudice, concluding that the Attorney General lacked authority to bring the lawsuit.

¶3         While this case was pending on appeal, this Court ruled in *State ex rel. Brnovich v. Maricopa Community College District Board* that it was illegal for state postsecondary institutions to award in-state tuition to students who were not lawfully present.   243 Ariz. 539, 540 ¶ 1 (2018).   Thereafter, ABOR announced it would discontinue providing in-state tuition to such students.

**¶4**　　　　The court of appeals in this case affirmed the trial court. Citing *Arizona State Land Department v. McFate*, 87 Ariz. 139 (1960), the appeals court concluded that the Attorney General only possesses authority that is specifically granted by statute and that A.R.S. § 41-193 did not provide authority to bring Counts I–V. *State v. Arizona Bd. of Regents* (*ABOR*), No. 1 CA-CV 18-0420, 2019 WL 3941067, at *3 ¶¶ 12–13 (Ariz. App. Aug. 20, 2019) (mem. decision).[1]  As for Count VI, the court noted that because ABOR ceased providing in-state tuition to students who were not lawfully present, the request for injunctive relief was moot, but it proceeded to assess the claim because the Attorney General also sought declaratory and monetary relief. *Id.* at *2 ¶¶ 10–11.  The court concluded that, because "collecting tuition does not constitute a 'payment' under A.R.S. § 35-212," and "the State did not identify any qualifying 'payment'" that constituted an illegal expenditure, Count VI was also properly dismissed. *Id.* at *3 ¶¶ 15–16.

**¶5**　　　　All three members of the appeals court panel joined in a concurring opinion asserting that "*McFate*'s interpretation of 'prosecute' in A.R.S. § 41-193(A)(2) appears to be flawed." *Id.* at *4 ¶ 22 (Morse, J., joined by Campbell & Cruz, JJ., specially concurring).  Although acknowledging that legislative acquiescence and stare decisis might counsel against overruling *McFate*, the judges closely examined the meaning of the term "prosecute" in the statute and suggested it was at odds with its narrow application in *McFate*. *Id.* at *4–6 ¶¶ 23–33.

**¶6**　　　　We granted review to determine whether the Attorney General's complaint was authorized by A.R.S. § 41-193(A)(2) and/or § 35-212—a question that necessarily encompasses considering the fate of *McFate*, which the Attorney General asks us to reconsider—and, if the complaint *was* authorized, whether dismissal of Counts I–V was required on the grounds of political question or whether legislative immunity

---

[1]　The court noted that the Attorney General acknowledged *McFate's* foreclosure of its argument that A.R.S. § 41-193 provides an independent basis for bringing the complaint but was preserving the question to present to this Court. *Id.* at *3 n.2.

required dismissal of the complaint in its entirety. All of these are issues of statewide importance. We have jurisdiction pursuant to article 6, section 5 of the Arizona Constitution.

## DISCUSSION

¶7 We review dismissal of a complaint de novo. *Coleman v. City of Mesa*, 230 Ariz. 352, 355 ¶ 7 (2012). Dismissal is appropriate "only if 'as a matter of law [] plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof.'" *Id.* at 356 ¶ 8 (quoting *Fid. Sec. Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, 224 ¶ 4 (1998)). Looking only to the pleadings, we "must assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts, but mere conclusory statements are insufficient." *Id.* ¶ 9.

## Counts I–V

¶8 In Arizona, unlike some other states, the Attorney General has no inherent or common law authority. Instead, our constitution provides that "[t]he powers and duties of . . . [the] attorney-general . . . shall be as prescribed by law." Ariz. Const. art. 5, § 9. Therefore, the authority of the Attorney General must be found in statute. *See, e.g.*, *Shute v. Frohmiller*, 53 Ariz. 483, 488 (1939) (observing that the Attorney General has no common law powers and that the term "prescribed by law" in article 5, section 9 refers to statutes), *overruled in part on other grounds by Hudson v. Kelly*, 76 Ariz. 255 (1953).

¶9 The Attorney General asserts he is authorized to challenge ABOR's policies that allegedly violate the "nearly free as possible" provision by A.R.S. § 41-193, which establishes the Department of Law and specifies its duties. Section 41-193(A)(2) provides that the department "shall . . . [a]t the direction of the governor or when deemed necessary by the attorney general, prosecute and defend any proceeding in a state court other than the supreme court in which the state or an officer thereof is a party or has an interest."

5

**¶10**       The Attorney General interprets this language as conferring upon him the authority to file a lawsuit, even against other state agencies, when he finds that the state has an interest in the matter. The "interest" he identifies is "requiring governmental actors to demonstrate compliance with constitutional commands": here, complying with the constitutional mandate that the state provide university tuition as nearly free as possible. By this broad reading of § 41-193(A)(2), the Attorney General would generally be free to initiate legal challenges against other state officers and agencies any time he concludes they are violating the law.

**¶11**       The Attorney General recognizes that *McFate* forecloses such a broad reading of § 41-193(A)(2). There, the Court considered "whether the Attorney General had *standing* to institute on behalf of the State of Arizona" an action against the Arizona State Land Department to enjoin a land sale that, *inter alia*, allegedly violated the state constitution.[2] 87 Ariz. at 140–41. The Court held that § 41-193(A)(2) did not authorize the action, *id.* at 145–46, basing its holding on two propositions. First, "the assertion by the Attorney General in a judicial proceeding of a position in conflict with a State department is inconsistent with his duty as its legal advisor"; hence, such an action is permissible only if specifically authorized by statute. *Id.* at 144. Second, the statute "presupposes a properly instituted proceeding in which the State or an officer thereof 'is a party or has an interest' and does not permit the Attorney General, in the absence of specific statutory power, to initiate an original proceeding." *Id.* at 145. The Court derived that holding from its conclusion that the term "prosecute," in the context of § 41-193(A)(2), did not encompass commencing an action but only litigating an existing one. *Id.* at 145–46.

---

[2] *McFate* and other cases use the term "standing" to describe the question of the Attorney General's authority. But under Arizona law, "standing" is a prudential doctrine. *See, e.g.*, *Arizonans for Second Chances, Rehab., & Pub. Safety v. Hobbs*, 249 Ariz. 396, 405 ¶ 22 (2020). The present case and the other cases discussed herein determine whether the Attorney General possesses constitutional or statutory authority to take a particular action, which is different from standing.

¶12 The Attorney General argues that we should overrule *McFate* because (1) it conflicts with *State ex rel. Morrison v. Thomas*, 80 Ariz. 327 (1956), and (2) it is based on an erroneous understanding of the term "prosecute" in § 41-193(A)(2).

¶13 In *Morrison*, the Attorney General filed a petition for review of a superior court judgment overturning the denial of a liquor license after the state liquor board declined to appeal that judgment. 80 Ariz. at 329. The Court reviewed the "narrow question" of "whether the Attorney General can represent the State without the permission of the administrative officer whose department has been given the authority to handle such affairs generally." *Id.* at 331. The Court concluded that the Attorney General was authorized to seek review based on the predecessor to § 41-193(A)(1), which also required the Department of Law to "[p]rosecute and defend in the supreme court all causes in which the state or an officer thereof in his official capacity is a party."[3] *Id.* at 332. This provision did not give the Attorney General control over the agency, the Court observed, but confirmed that "he may, like the Governor, go to the courts for protection of the rights of the people." *Id.*

¶14 *McFate* distinguished *Morrison* on the ground that the Attorney General's action in *Morrison* was in support of an agency determination, in the context of an ongoing case in which the state already was a party. 87 Ariz. at 147. In the *McFate* context, where the Attorney General asserted that the agency was acting illegally, the Court held that the Arizona Constitution vests in the governor the exclusive authority "to protect the interests of the people and the State by taking care that the laws are faithfully executed." *Id.* at 148 (citing Ariz. Const. art. 5, § 4, which provides that the governor "shall take care that the laws be faithfully executed"). We agree with *McFate* that its holding is not inconsistent with the resolution of the narrow question presented in *Morrison*.

---

[3] The predecessor and current provisions contain identical language.

¶15 However, we find merit in the Attorney General's argument and the court of appeals' concurrence that one of *McFate*'s core premises— that "prosecute" in § 41-193(A)(2) does not encompass initiating litigation—is flawed. The court of appeals' concurrence meticulously examined usage of the term "prosecute" throughout Arizona history, including contemporaneously with the adoption of the statute, and found it ordinarily encompassed both the initiation and continuation of litigation in both the criminal and civil contexts. *ABOR*, 2019 WL 3941067, at *5 ¶¶ 24–26 (Morse, J., specially concurring) (citing, *inter alia*, Black's Law Dictionary 1450–51 (3d ed. 1933) and 1385 (4th ed. 1951), which defines "prosecute" and "prosecution" to include commencement of litigation); *see also Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 270 n.16 (5th Cir. 1976) ("We must reject any argument . . . that the right to 'prosecute' an action does not include the right to institute the action."). The concurrence noted that the examples cited by *McFate* involved statutes of limitations and venue, in which more precise measures are appropriate, and therefore the term "prosecute" might logically be construed more narrowly. *ABOR*, 2019 WL 3941067, at *5–6 ¶¶ 27–31. We agree with the concurrence that *McFate*'s interpretation of "prosecute" to exclude commencing litigation reflects an exception to the rule that is not applicable in this statutory context. To the extent the Attorney General is empowered to "prosecute" cases under § 41-193(A)(2), that authority includes initiating litigation.

¶16 But we affirm *McFate*'s core holding that § 41-193(A)(2) does not provide the Attorney General with authority to right constitutional wrongs committed by state officials and agencies. We do so as a matter of stare decisis, statutory construction, and legislative validation of *McFate*.

¶17 The doctrine of stare decisis is based upon the value to the rule of consistency, continuity, and predictability. *See Galloway v. Vanderpool*, 205 Ariz. 252, 256 ¶ 16 (2003) ("[S]*tare decisis* . . . seeks to promote reliability so that parties can plan activities knowing what the law is."). The doctrine is most salient when we interpret statutes, because it is easier for the legislature to correct any misinterpretations it perceives we have made in that context. *See, e.g., Kimble v. Marvel Ent.*, 576 U.S. 446, 456 (2015); *Galloway*, 205 Ariz. at 256 ¶ 16 ("Importantly, our deference to precedent is strongest when prior decisions construe a statute."); Antonin

Scalia & Bryan A. Gardner, *Reading Law: The Interpretation of Legal Texts* 255 (2012) (Stare decisis "has special force in statutory cases" because a legislature "can change the law whose meaning the prior judicial interpretation established.").

**¶18** As we are construing a statute, stare decisis holds considerable sway, as do the duration and stability of the precedent the Attorney General asks us to overturn. *McFate* has been the law for sixty years, and its demise would mark a significant expansion in the Attorney General's power that neither the constitution nor legislature contemplated. Although *McFate* is flawed precedent, we need not throw the baby out with the bathwater: its flaws can be corrected without overturning its sound core holding.

**¶19** Indeed, bestowing upon the Attorney General the open-ended grant of authority he urges is inconsistent with the language and context of § 41-193(A)(2). As the Governor points out in his amicus brief, § 41-193 lists duties, not powers. That is so because it provides that the Department of Law "shall" perform certain tasks, among which are representing the state and public officials in specified instances. The term "shall" is usually mandatory. *See, e.g.*, *Ariz. Downs v. Ariz. Horsemen's Found.*, 130 Ariz. 550, 554 (1981). All the duties the statute imposes are specific and granular. As to subsection (A)(2), the Attorney General shall "[a]t the direction of the governor or when deemed necessary by the attorney general, prosecute and defend any proceeding . . . in which the state or an officer thereof is a party or has an interest." In the context of other duties—such as prosecuting and defending all proceedings in this Court in which the state or an officer is a party (subsection (A)(1)), assisting county attorneys in certain circumstances (subsection (A)(5)), and providing legal opinions to various public officials (subsection (A)(7))—the statute clearly created duties of legal representation rather than broad grants of authority.

**¶20** This construction of the pertinent statute is buttressed by the fact that, as ABOR points out, the legislature enacted more than one hundred statutes after *McFate* expressly empowering the Attorney General to take specified legal actions, including against state officers and agencies.

*See, e.g.*, A.R.S. § 44-1528 (Attorney General may seek relief under the Arizona Consumer Fraud Act); A.R.S. § 37-908 (may initiate actions regarding state claims to public lands); A.R.S. § 13-2314(A), (G) (may file actions enforcing Arizona Racketeering Act); A.R.S. § 15-107(K) (may bring actions regarding school board member training requirements); A.R.S. § 41-1279.07(G) (may apply for relief when political subdivisions fail to comply with uniform expenditure reporting system); A.R.S. § 41-194.01(A)–(B) (may take action against municipalities for ordinances that conflict with state law). Indeed, § 35-212, on which Count VI is based, is one of the statutes that expressly authorizes action by the Attorney General against state officers and agencies.

**¶21**        None of those statutes would have been necessary had § 41-193(A)(2), as the Attorney General argues, conferred upon him open-ended discretion to prosecute any action he deems necessary to advance the state's interest. ABOR argues that these enactments constitute "legislative acquiescence" in our *McFate* decision. We are reluctant to presume that legislative silence as to the specific provision at issue is an expression of legislative approval. *Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 106 (1993). Here, however, the sheer volume of express, specific grants of authority makes it clear that the legislature shares our view, as held in *McFate*, that § 41-193(A)(2) was not intended to confer expansive powers on the Attorney General. Instead, each legislative act is the means by which "[t]he powers and duties of . . . [the] attorney-general . . . [have been] prescribed by law." Ariz. Const. art. 5, § 9. And, as the Attorney General possesses only such powers as the legislature grants him, we cannot construe the broader language of § 41-193(A)(2) to subsume and render superfluous the scores of narrower and more specific grants of authority enacted over the past sixty years. Those statutes give the Attorney General extensive authority to initiate litigation in a wide variety of contexts; but no one here, including the Attorney General, asserts that any of them expressly authorizes Counts I–V of this action.

**¶22**        Finally, the Attorney General argues that § 35-212, which authorizes him to enjoin the illegal payment of public monies and on which Count VI is based, permits him to bootstrap Counts I–V to that claim. For support he relies on *Fund Manager, Public Safety Personnel Retirement*

*System v. Corbin*, which held that "the Attorney General's discretionary power under A.R.S. § 35-212(A) necessarily includes the authority to press any ethically permissible argument he deems appropriate to aid him in preventing the allegedly illegal payment of public monies or in recovering public monies alleged to have been illegally paid." 161 Ariz. 348, 354 (App. 1988). But unlike the claim made in *Fund Manager,* here Counts I–V are conceptually and substantively distinct from Count VI because they are not aimed at aiding the Attorney General in preventing or recovering illegal payments, which is all that the statute authorizes. Thus, § 35-212 does not provide a basis for Counts I–V, and those claims were properly dismissed for lack of authority on the part of the Attorney General to prosecute them. As a result, we need not reach the political question and legislative immunity arguments raised by ABOR.

**Count VI**

**¶23**      Section 35-212(A) provides that the Attorney General may, in his discretion, "bring an action in the name of the state to: 1. Enjoin the illegal payment of public monies . . . [and] 2. Recover illegally paid public monies . . . ."

**¶24**      The gravamen of Count VI is that ABOR was illegally subsidizing in-state tuition for students who were unlawfully present. ABOR and the court of appeals point out that collection of tuition is not "payment" of public funds under § 35-212(A) and that the complaint was deficient on its face because it failed to identify a specific illegal payment.

**¶25**      But in reality, the action expressly challenges both ABOR's "fail[ure] to collect [public] monies" *and* "illegal payment of public monies." *Cf.* A.R.S. § 15-1664 (providing that "[a]ll monies for the use and benefit of an institution under its jurisdiction shall be expended under the direction and control of the Arizona board of regents"). The Attorney General alleged in his first amended complaint that "[s]tudents who attend any of the Universities and pay only in-state tuition are receiving a subsidy in the form of expenditure of public monies toward their education." The Attorney General subsequently argued that because the amount of in-state

11

tuition is less than the cost of education, ABOR necessarily illegally expended public funds when it extended in-state tuition to students who were unlawfully present. ABOR vigorously contests that assertion, but in deciding a motion to dismiss, the court should look only to the complaint and assume all well-pled allegations are true. *Coleman*, 230 Ariz. at 356 ¶ 9. To the extent the trial court resolved this factual issue against the Attorney General in dismissing the complaint before discovery that might support his claim, it did so prematurely.

**¶26** ABOR and the court of appeals rely on *Biggs v. Cooper* for the proposition that a complaint alleging a violation of § 35-212(A) is properly dismissed where it "does not establish any identifiable payment that may be prevented or recovered." 234 Ariz. 515, 522 ¶ 19 (App. 2014), *aff'd in part, vacated in part on other grounds by* 236 Ariz. 457 (2014). Given that Arizona is a notice-pleading jurisdiction, *Coleman,* 230 Ariz. at 356 ¶ 9, we do not think that identifying a specific expenditure is necessary when the complaint states that an agency is engaging in what is essentially a pattern and practice of illegal expenditures.

**¶27** Indeed, we rejected that precise argument in *State ex rel. Woods v. Block*, 189 Ariz. 269 (1997). There, the Constitutional Defense Council ("CDC") contested the Attorney General's authority to challenge the constitutionality of the CDC under § 35-212(A) because he had not challenged any particular expenditure of funds by the CDC. *Id.* at 274. The Court held that § 35-212(A) conferred such authority, observing that "CDC's power to employ attorneys for litigation is meaningless without funding," and therefore "the Attorney General's request to prohibit CDC from exercising its power to litigate necessarily includes a request to prohibit payment for such litigation." *Id.*; *see also Fund Manager*, 161 Ariz. at 354–55 (explaining that the Attorney General "is acting pursuant to a specific grant of statutory authority" in challenging constitutionality of statute that entails improper expenditure of funds); *cf. Turken v. Gordon*, 223 Ariz. 342, 348 ¶ 22 (2010) (holding that, in the context of the constitution's gift clause, a "forbidden subsidy" is demonstrated by the difference between a public expenditure and what is received in return). The Attorney General is entitled to prove that, in providing in-state tuition on behalf of students who were unlawfully present, ABOR illegally expended funds

beyond the amount of tuition collected, but ultimately, he bears the burden of identifying such expenditures. Should he fail to establish facts supporting his claim, the matter can be adjudicated in ABOR's favor through summary judgment or otherwise. Further, the Attorney General's authority under the statute is expressly limited to seeking injunctive relief against and recovery of illegally expended funds.

¶28 ABOR also argues that the entire action is precluded by legislative immunity. This argument fundamentally misperceives the concept of legislative immunity, which is extended to shield individual officials from personal liability for their legislative acts. It has nothing to do with shielding governmental entities from challenges to claimed illegal actions. *Ariz. Indep. Redistricting Comm'n v. Fields*, 206 Ariz. 130, 136–38 ¶¶ 15–19 (App. 2003). The Attorney General is suing to recover alleged illegal payments from ABOR, which is expressly authorized by § 35-212(A), and is not suing officials for personal liability in their individual capacities. Therefore, legislative immunity is inapplicable.

¶29 For the foregoing reasons, dismissal of Count VI was improper.


## ATTORNEY FEES AND DISPOSITION

¶30 ABOR requests attorney fees under A.R.S. § 12-348.01. As this is a split decision, with ABOR prevailing on Counts I–V and the Attorney General succeeding in having Count VI reinstated, we conclude there is no "successful party" and therefore each side shall bear its own fees and costs.

¶31 We affirm the trial court's dismissal of Counts I–V, reverse it as to dismissal of Count VI, vacate the opinion of the court of appeals, and remand to the trial court for further proceedings pursuant to this opinion.